NELLIE R. CARRIG *v.* ALFRED A. ANDREWS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 8, 1940—decided January 10, 1941.

*Samuel H. Platcow,* for the appellant (plaintiff).

*Wilbur F. Davis,* for the appellee (defendant).

ELLS, J. This appeal presents a new question in the law of lateral support, in that the excavation on the defendant's land was made by the force of wind and water generated by an unprecedented hurricane, and not by the hand of man. The parties to the action are owners of adjoining premises fronting on Long Island Sound at Short Beach. During the unforgetable hurricane of 1938 the tidewaters washed out a sizable portion of the defendant's seawall and the land back of it, close to but not immediately at the plaintiff's boundary line. There was left a three foot strip of wall and soil, which continued to furnish lateral support to plaintiff's land in its natural condition. The plaintiff promptly notified the defendant that the supporting wall and soil would subside and deprive her land of support and demanded that he take preventive measures. The supporting land subsided, erosion caused a small portion of plaintiff's land to crumble away, and she brought this action based on deprivation of lateral support, claiming an injunction requiring the defendant to refurnish support, and damages resulting from inability to rent her cottage. The trial court concluded that the defendant was under no duty of providing lateral support destroyed by the natural elements and not through any act of his own, and

rendered judgment for the defendant. The plaintiff appealed.

Adjudicated cases are many in number, but they have to do with the consequences of excavations made directly or indirectly by an owner of land. We have found none which deal with those caused by unprecedented acts of nature. The complete lack of authority for the plaintiff's contention is of some significance.

It is a case of first impression. Decision rests upon an application of fundamental principles, and a resort to helpful analogy. We have said of the nature of the so-called right of lateral support that it is regarded as an incident to the ownership of land. *Trowbridge* v. *True*, 52 Conn. 190, 199. It is a right of property necessarily and naturally attached to the soil, and passes with it. 1 Am. Jur., § 21, p. 519. There is no right of ownership in a neighbor's soil, for the latter may excavate his land up to the very boundary line, and use the soil as he chooses, provided he refurnishes by artificial means the support thus removed. It is not a property right in the use of the adjoining proprietor's land. That right is in the latter, but is limited by an obligation of lateral support. He must not excavate so near the line that his neighbor's soil, by reason of its own weight or the action of the elements, is liable to give way. *Ceffarelli* v. *Landino*, 82 Conn. 126, 129, 72 Atl. 564.

Tiffany treats it as a right of immunity from damage to the physical structure of one's land, rather than as a right to freedom from interference with enjoyment. 1 Tiffany, Real Property, § 335. It is necessarily related to the rights of the adjoining landowners. Adjoining owners have a natural right to the lateral support of each other's ground; or, to state it more exactly, while an adjoining owner has the right to excavate his own ground for any lawful purpose, he

must do so in such manner that his neighbor's land will not, by its own weight or through the action of the elements, fall into the excavation. See *Sullivan v. Zeiner*, 98 Cal. 346, 33 Pac. 209.

The latest, 1939, and in many respects the most helpful treatment of the law concerning lateral support is found in the Restatement of the Law of Torts, Vol. 4, Chapter 39, p. 183. The chapter "deals with invasions of interests of a possessor of land in the support of his land," page 183, and states "the liabilities of a person who withdraws the support furnished by one parcel of land to a parcel of land in possession of another person in so far as such liabilities arise from an invasion of the interests of the other in the support of his land." p. 184. Nowhere is it suggested that liability attends an invasion by forces which are unforeseeable and are beyond the actor's control, except as it may perhaps be involved in the language of the "Second Caveat," which says that "the Institute expresses no opinion as to whether a person who withdraws lateral support which his land furnishes to another's land is liable for a subsidence that would not have occurred but for the intervention of an extraordinary force of nature." p. 198. The statement involves a situation where lateral support was originally withdrawn by an act of man. Therefore it does not apply to the present case. We quote a few additional excerpts which illustrate the point that the discussion appears to assume that liability is confined to withdrawal of support by human agency. "The liability . . . is absolute in the sense that it exists although no subsidence is intended or foreseeable, and although in removing the lateral support the utmost care and skill are used to prevent a subsidence." p. 187. "The withdrawal of the naturally necessary lateral support subjects the actor to liability. . . ." p. 193. "The

actor is subject to the liability stated in this Subsection when, and only when, he withdraws naturally necessary lateral support as defined in Comments *c* to *g*, or, when he withdraws artificial support which has been substituted for the natural support." p. 196.

These considerations and citations are sufficient to enable us to say that, as applied to the facts of this case, the so-called right of lateral support is in essence not an insurance that nothing will happen to adjoining land that will cause an interference with an owner's or possessor's right of lateral support, but rather that the adjoining owner or possessor will do no act which will cause such interference. The wrong complained of here is that the defendant, after notice, failed and refused to refurnish lateral support removed, not by his own act, but by an unprecedented act of nature. He was under no such duty.

Although, as we have said, there are no decided cases in point, there are certain beacons which enable us to follow a rather definite course. In *Whiting* v. *Gaylord*, 66 Conn. 337, 344, 34 Atl. 85, Chief Justice Andrews, in discussing the nature of lateral support, says that it is analogous to the right of a riparian proprietor to the flow of a stream of water. What then would be the situation if, from natural causes, the flow of the stream was interfered with on the land of one proprietor affecting the right of another? Farnham says the effect would not be to impose upon the owner of the land where the obstruction occurs any duty to remove it, although the owner of the other property might have the right to enter for that purpose. 2 Farnham, Waters, pp. 1576, 1832. While the right of lateral support is not strictly an easement, it is analogous to it in many respects. The law is settled that the obligation of the owner of the servient estate, as regards an easement, is not to maintain it, but to refrain

from doing or suffering something to be done which results in an impairment of it. 2 Thompson, Real Property (Perm. Ed.) § 675.

We conclude that the so-called "right of lateral support" is not an unqualified right, and that under the circumstances of this case the defendant is not obligated to provide support for that lost through an Act of God. The plaintiff attempts to avoid this result by claiming that the defendant maintained a nuisance, created originally by an act of God. The complaint, upon which she must rely, does not present that question. The determinative question is whether or not the rules regarding infringement of rights of lateral support extend to or should be extended beyond the results or consequences of affirmative acts of the defendant—such as excavations on his own land, which is the usual case.

The plaintiff seems to contend that although if the unprecedented act of nature had washed away the land immediately at the boundary line there might be no recovery, the fact that a three foot strip was left, which would be subject to erosion, imposed on the defendant a duty to maintain it, and that he was negligent in his omission to do so. We see little force to this claim. Such negligence would be omission to perform a legal duty, and we have concluded there was no such duty.

The trial court reached the interesting conclusion that "the right of an adjoining property owner exists only so far as to require lateral support for his land in its natural state from his neighbor's land in its natural state." We find authority for the inclusion of the natural state of the defendant's land in a definition in the Restatement, supra, p. 188: "Naturally necessary lateral support is that support which the supported land itself requires and which in its natural condition

and in the natural condition of the surrounding land it would require." The court then stated that the condition in which the defendant's property was left by the force of the hurricane and the tide-waters was the natural state of that property, and that any further erosion due to nature, such as the crumbling of the three foot bank, merely decreased the extent of the support which this natural condition afforded. This is a logical conclusion. The defendant would not be liable if the natural state of his land resulted in erosion which caused loss of lateral support.

There is no error.

In this opinion the other judges concurred.