[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs seek a permanent injunction restraining the defendants from maintaining two gates in a closed position which are located on two deeded rights of way located on property owned by the defendants, as well as other relief.
This action was commenced by an order to show cause dated September 12, 1989. By agreement of the parties a temporary injunction was entered on September 25, 1989 which was remained in effect since that time.
The defendants' servient estate was conveyed to them on January 31, 1978 (although they had rented the property for several months before buying it). The rights of way in question are included in the deed and for the purposes of this decision may be described as, first, a right of way to the owners of the adjacent property to use, in common with the defendants, a driveway running from Notch Road across the defendants' property to the adjoining property which is owned by the plaintiffs.
The plaintiffs also have a driveway from Notch Road to their home, but their lot is steep and the principle purpose of this right of way is to allow more convenient access. The second right of way is described as a cart path or wood road which runs from Notch Road to the rear of the plaintiffs' property. Again, this right of way provides access to the rear of the plaintiffs' property which, because of the topography, would otherwise be difficult if not impossible. This second right of way is also subject to the common use of both parties. CT Page 6511
At the time the Bennetts moved onto the property the Hoffmans had already been living in their home for several years. The first right of way was a paved driveway and readily delineated. The cart path was also obvious. Neither right of way was gated at the time.
In October 1987, the Bennetts installed gates across each right of way close to their Notch Road points of entry, which have become the primary points of contention between the parties.
The Court concludes that neither gate is an unreasonable interference or disturbance to the plaintiffs' use of the rights of way. Each will be discussed separately.
With respect to the so-called cart path, the Bennetts became concerned about hunters and other trespassers who would use the cart path. The Hoffman's do not have occasion to use it with regularity and when they have there has been no obstruction to its use by the Bennetts. The gate does not have a lock. It is opened by lifting a latch and swinging it open. It takes little effort to open the gate and a child could do it. Since installing the gate, it has worked to effectively keep trespassers from using the cart path.
Under the circumstances, any inconvenience involved in the minute or so it takes to open the gate is not an unreasonable obstruction or interference with the plaintiffs right to use the cart path.
With respect to the driveway right of way, the Bennetts' house is situated approximately 15 feet from the right of way which crosses directly across the front of their home. The Bennetts have two children, one born in 1980 and the other in 1987. The Bennetts became concerned about the speed of the cars traversing the driveway, primarily the Hoffmans' two teenagers at the time and their friends. The Bennetts' children would naturally use the paved driveway for bicycles and riding toys, and the yard in the front of the home was a natural play area. Requests to the Hoffmans to have the cars driven by their family and friends slow down were unsuccessful and the Bennetts installed a gate across the base of the right of way primarily for that purpose. (Although it also acts as a stop for their children). It is a gate similar to the other. It is never locked, but it closes with a latch and is easily moved.
The use of the driveway by the Hoffmans varies as to CT Page 6512 frequency, but probably is used more frequently in the winter driving periods of ice or snow. During the summer months Mr. Hoffman from time to time hauls a horse trailer over it for easier maneuvering. As noted, the Hoffmans also have their exclusive driveway leading directly from Notch Road to their residence. Although the Hoffman children are now approximately twenty five years old, the Bennetts still believe that there is unnecessary speed when the gates are opened, and given the proximity of the driveway to their house and yard area, they are concerned for the well being of their family. When the gate has been in a closed position the speed problem is ameliorated.
It bears restating that this right of way is to be used in common by both the Bennetts and the Hoffmans. Mr. Hoffman is unrealistic in stating that children playing in the driveway is an unreasonable use of the right of way. Children have riding toys and a driveway is a natural attraction on which to use them.
The determination as to whether or not an interference with a right of way is reasonable under the circumstances is a factual one. Kelly v. Ivler, 187 Conn. 31, 49 (1982). 25 Am.Jur.2d 91.
The Court concludes that the inconvenience of stopping to unlatch a gate, given the frequency and nature of the use, when compared to the personal safety of residents or visitors is reasonably minimal and not an undue obstruction or interference with the use of the right of way.
Prior to 1989, there were instances where cars were left parked on the right of way by the Bennetts or their guests. Since September 1989, according to Mr. Hoffman, the driveway has been left free and clear. Thus it would seem that injunctive relief is not necessary with respect to this issue.
For the forgoing reasons, the temporary injunction is dissolved and the application for a permanent injunction is denied.
BY THE COURT,
Hon. Lawrence C. Klaczak, J. Superior Court Judge CT Page 6513