[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the present and former owners of land seeking an injunction to prohibit the defendants from using for all purposes of travel a driveway which crosses the plaintiff's land and terminates on Indian Field Road, a public highway in the Town of Greenwich. The plaintiffs allege that (1) The defendants have no legal right to do so (2) such use constitutes a trespass and nuisance, (3) the defendants have disparaged and slandered their title by filing certain documents in the Greenwich Land Records and (4) the defendants have interfered with the plaintiff Stiefel's contractual expectations.
As for (3) and (4) above, no evidence was offered to support these claims and so these issues are found for the defendants. In addition to the named parties, Elizabeth Gibson Dubois was made a third party defendant because she owns land over which the northerly portion of the driveway traverses. In her cross complaint over against the named defendants she makes the same claims as the plaintiffs and seeks the same relief. The named defendants have interposed two special defenses both of which assert a right of way over the driveway by express grant of an easement or in the alternative, by prescription. Both cases were consolidated for trial.
The plaintiff in the first case is the present owner of .73 acres designated as lot number 3 on a filed map entitled "Property of Florence C. Maginnis". The defendants own 9.7 acres on the waters of Long Island Sound which is designated on this map as "Tobeason". The third party defendant owns land which abuts lot number 3 and lot number 1 on the north designated on the map as CT Page 9165 "Dubois". The final piece in the puzzle through which the driveway passes is lot number 1 which is owned by Schubin who also owns lot number 2. All properties are improved with substantial dwellings either facing or oriented to Long Island Sound. The Schubins began as co-plaintiffs with Stiefel but withdrew from the action shortly after they conveyed an easement over lot number 1 to the defendants for vehicular and foot traffic.
The two principal issues in this case are as follow: (1) whether the defendants have any right to travel over lot number 3, and (2) whether they have the same rights over Dubois's property. There is no longer an issue as to whether the defendants enjoy a right of way over lot number 1 because that was settled by the easement grant from Schubin to the defendants on April 28, 1991.
THE EASEMENT OVER LOT NUMBER 3
Prior to November 9, 1951 Hans F. Tobeason ("Tobeason") owned land which now comprises lots number 1, 2 and 3 and the 9.7 acres owned by the defendants, all of which is shown on the aforementioned map of Florence L. Maginnis. On that date, Tobeason conveyed lots 1, 2 and 3 to Florence L. Maginnis. The deed did not expressly reserve a right of way over the driveway in question. Instead, it reserved a right to maintain existing utilities located within the premises conveyed. In 1952, Florence Maginnis quit claimed lot number 3 to her husband, Thomas Maginnis. On February 23 of that year both Maginnises and Tobeason entered into an agreement under which Tobeason released all of his rights in and to lot number 3. The habendum clause recited that Tobeason and his heirs would be forever barred and excluded from the premises. The effect of this was to preclude Tobeason as the owner of the 9.7 acre tract from using lot number 3 to get to Indian Field Road. In 1966, Caroline F. Otto ("Otto") acquired both lot number 3 and the 9.7 acre piece. The deed conveyed the property "together with the appurtenances and all rights in and to the private roads or driftways leading to or adjoining said premises". There is no question but that lot number 3 retained a right of way over the driveway to Indian Field Road but the 9.7 acre tract had previously relinquished that right in the Tobeason/Maginnis agreement. In 1971, Otto conveyed lot number 3 to Emily Coyne ("Coyne") together with the right to use the driveway. The deed contained the following provision: "Grantors herein reserve a right of way for their remaining property over the existing driveway for all lawful purposes of travel and for connecting with any utilities which may be located thereon". CT Page 9166
In 1976, Coyne conveyed lot number 3 to Herbert and Lucy Stiefel ("Stiefel"), the plaintiff in the second case. Coyne conveyed the land "together with all appurtenances thereof, including all rights and interest of the grantors in and to the private roads or driftways leading to or adjoining said premises on the west and north." The conveyance was expressly subject to "rights of others in and to the northerly thirteen feet of said premises formerly comprising a portion of the private road running easterly from Indian Field Road to Long Island Sound."
In 1982, Otto conveyed the 9.7 acre tract to Frayda and Carol Lindemann, the defendants herein "together with the appurtenances and . . . all rights and interest in and to the private roads, driveways and driftways leading or adjoining said premises and all right, title and interest, if any, in the public roads leading to or adjoining said premises."
In 1988, Stiefel sold lot 3 to Louis Grossman a co-plaintiff herein, "together with all appurtenances thereof, including . . . all rights and interest of the grantors in and to the private roads or driftways leading to or adjoining said premises on the west and north." Paragraph number 15 of the "subject to's" (more appropriately called exceptions to title), made the conveyance subject to the reservation of a right of way as contained in the deed from Otto to Coyne.
The plaintiff's chief argument is that the deed from Otto to Coyne failed to reserve an appurtenant easement over lot number 3 in favor of the 9.7 acre tract because it omitted to use the words of inheritance "heirs and assigns". If this argument is correct, it follows therefore that it created an easement in gross personal to Otto which was extinguished when Otto sold the property to the defendants.
It has been held consistently in Connecticut that if in the reservation of an easement no mention is made of the heirs and assigns of the grantor a "presumption is created that the intent of the parties was that merely a personal right of way was reserved. This presumption however is not conclusive. A reservation will be interpreted as creating a permanent easement if from all the surrounding circumstances it appears that was the intent of the parties". Kelley v. Ivler, 187 Conn. 31, 39 (1982). An easement of way will never be presumed to be personal when it can fairly be construed to be appurtenant to the land. Id. at 42. CT Page 9167
In Birdsey v. Kosienski, 140 Conn. 40, 403 (1953) the deed reserved an easement for the grantor but the words "heirs and assigns" were omitted. The court weighed the facts offered to prove that the easement was of value and that the owners of the servient tenement had recognized the rights of the dominant tenement for a long period of time. The court held that the easement was appurtenant. Similarly, in Kelley v. Ivler, supra, the court found that the reservation of the easement was appurtenant although it did not contain words of inheritance. The court examined the surrounding circumstances and found that the easement enhanced the value of the dominant tenement. In Dunn Bros. v. Lesnewsky, 164 Conn. 331 (1973) the court found that a deed reserving "an appurtenance to other land of the grantors" was sufficient to create an appurtenant easement without additional words of inheritance. The court found that a railroad spur crossing the servient tenement had value to the dominant tenement and that the owner of the servient tenement permitted the owners of the dominant tenement to use the spur for many years.
In Leabo v. Leninsky, 182 Conn. 611 (1981) several subdivision deeds contained the following language: "together with the right to use in common with others, for the purpose of bathing only, the beach located easterly of the second piece." The deeds also conveyed "a right of way for all purposes whatsoever, including the installation and maintenance of public utilities, in common with others, in, through, over and upon Walden Hill Road." The court held that the easement enhanced the value of the dominant estate because it afforded it access to the waterfront. It also found that subsequent owners of the lots in the subdivision actually used the beach without objection from the defendants predecessors in title. The court upheld the plaintiff's position that the easement was appurtenant and not in gross.
Thus, our courts apply a three part test to determine whether an easement is appurtenant or in gross, viz: whether (1) the easement is of value to the present and future owners of the dominant tenement and does not merely further the convenience of the grantor; (2) the owners of the servient tenement have no objected to the use of the easement until recently, and (3) the language of the deed indicates that the easement is appurtenant although words of inheritance are not used. Each will be considered an order:
(1) It is apparent to the court that the defendants' property CT Page 9168 is a special piece of real estate in the Town of Greenwich. The 9.7 acre tract is bounded on its easterly and southerly sides of the waters of Long Island Sound and is improved with a very substantial residence which in an earlier era would have been called a mansion. In its northeast corner it is served by a 6 car stone garage and caretaker's cottage. The driveway in question passes adjacent to this building and affords direct access to and from it. In fact, the defendants' caretaker parked his vehicle in the garage and used the driveway as means of ingress and egress. In addition, there was considerable testimony from the defendants' contractor Dinyar Wadia, that while he renovated the defendants' house in the early 1980s all of the construction vehicles and equipment utilized the driveway to get to the main house. There was additional evidence that the driveway had been used as a service entrance over the years, and that such service entrances are common on large estates in Greenwich. Contradictory testimony from the plaintiff Stiefel and the witness Intrieri are found not credible. Finally, the Deputy Fire Chief and Fire Marshall of the town testified that the ability of emergency fire equipment to reach the main house is enhanced by accessibility to the driveway as the main entrance is too narrow to permit passage of a firetruck.
On the contrary, the plaintiffs argue that the easement couldn't have been of any value to the defendants because at the time that the defendants purchased the premises from Otto they had no right of way over lot number 1 since that was previously relinquished in the agreement between Tobeason and Maginnis. Thus, they assert, the defendants had an easement that stopped at the easterly boundary of lot number 1 and so was an easement to nowhere. It is this court's belief that the utility of the easement cannot be examined in a vacuum. Even if the plaintiffs' position were correct, an easement which has the potential to connect up with an intervening easement and thereby afford continuous access to the highway has definite value to its owner, especially in the circumstances of this case. Secondly, the parties themselves believed the easement had value because except for a brief period which is discussed infra, it was in actual use for many years by the dominant estate with the acquiescence of the owner of the servient estate. The court finds that an easement over this driveway is of significant value to the dominant estate and not merely to the Ottos whom the plaintiffs claim failed properly to reserve it.
(2) Examination into the second circumstance which the court CT Page 9169 is required to consider indicates that in every deed of lot number 3 subsequent to the conveyance from Otto to Coyne, reference has been made to the reservation of this easement by recognizing it explicitly in the "subject to's" section of the deeds, including the deeds into the plaintiffs. This is consistent with the plaintiffs Stiefel's conduct. Stiefel did not object to the defendants' use of the driveway from the time the defendants bought the property in 1982 until 1988 when Stiefel decided to place his property on the market, at which time he discovered that the easement across his property was an impediment to sale. The court finds that the second prong of the test has been satisfied.
(3) Turning now to the language used in the deed to determine the nature of the easement, the meaning and effect of the language is dependent not only on the actual words used but also on the grammatical organization and structure of the provisions in question. The plaintiffs contend that besides omission of words of inheritance, the grantors could not have intended the easement to run with the land because they positioned the reservation provision within paragraph 13 which begins with reference to an existing tenancy which is itself transitory. They go on to argue that had they intended an appurtenant easement they would have included the provision in paragraph number 12 which by its express terms runs with the land. The plaintiffs do not challenge the right of the defendants to maintain their utilities under the driveway for various reasons. Yet the language is the same for both the utilities and the right of way. Their next claim is that use of the word "their" before the words "remaining property" evinces an intent that the easement was to have been personal to the grantors, because "their" is a personal pronoun. They further cite the fact that this provision is sandwiched in between two other provisions which are personal in nature. Such an interpretation places undue emphasis on the personal pronoun "their" and not enough emphasis on the word "property". As the expert Alfred Monroe testified, it doesn't make sense that within the same sentence the grantors could have intended the utility easement to run with the land but not the right of way. The specific language of the reservation expresses a definite intent that the reservation benefit the property and not just the Ottos.
The plaintiffs construe the reservation as part of paragraph number 13. The court disagrees. The fact that the provision is not indented does not make it less of a separate paragraph. A paragraph is a "distinct section or subdivision . . . usually dealing with a particular point: it is begun on a new line, often CT Page 9170 indented." (Emphasis supplied). Webster's New World Dictionary, 2d College Ed., 1979 at 1029. Applying this definition to the reservation produces the following result: the reservation is a distinct section of the deed which deals with a particular subject or point, namely the driveway. It is begun on a new line but is not indented for the simple reason that no other typewritten provision in the instrument is indented. On the other hand, it is given distinct and separate status by virtue of the fact that considerable blank space follows it to the margin. From this analysis it can be inferred that the grantors intended this provision to stand alone and not become a part of either the sentence that precedes or follows it.
Finally, the plaintiffs rely on the testimony of their expert Robert Mowbray who opined that the language contained in the habendum clause of the Tobeason/Maginnis agreement that Tobeason would be "forever barred and excluded" (emphasis added) from lot number 3 was "completely alien" to the spirit of ever recreating that right in the future. Hence the plaintiffs argue, this language forever precludes any subsequent owner from reacquiring such rights. The plaintiffs cite no authority for this proposition. On the contrary, it is well settled that parties to an agreement can always undo what they have previously done. Bushnell Plaza Development Corp. v. Vitazzano, 38 Conn. Sup. 683,688 (1983). Moreover, this argument misconstrues the extent of what Tobeason relinquished under this instrument. Tobeason gave up only the rights and appurtenances which lot number 3 had over lot number 1. He did not part with the rights appurtenant to his remaining property, the 9.7 acre tract. The evidence is sufficient to rebut the presumption of a personal easement.
Next, the plaintiffs claim that the fact that the defendants erected a metal fence across the driveway is evidence either of their intent to abandon or their acquiescence in the non existence of the easement. The evidence indicates that approximately in 1985 the plaintiffs installed a chain link fence across the driveway roughly at Stiefel's boundary line as part of a perimeter fence designed to contain their domestic animals. Sometime in 1987 a gate was installed in the fence to permit vehicular access. After installation of the fence, Stiefel asked and received from the defendants permission to plant grass on their side of the fence which was followed by the installation of shrubbery.
"To establish an abandonment of an easement by the acts of the owners of the dominant tract it is said that his `acts must be of CT Page 9171 so decisive and conclusive a character as to indicate and prove his intent to abandon the easement'". American Brass Co. v. Serra,104 Conn. 139, 148 (1926) or the owner of the servient estate must act in a way inconsistent with the existence of the easement for the statutory period. Richardson v. Turnbridge, 111 Conn. 90 (1930).
The court's reference in American Brass Co., supra, to the Massachusetts case of Hayford v. Spokesfield, [infra] is as apposite here as it was there. "The case of Hayford v. Spokesfield, 100 Mass. 491 is peculiarly pertinent on the erection of a division fence extending across the way by the owner of the dominant tract. `One having a right of way over another's land does not . . . extinguish it by erecting a board fence, 5 feet high on the boundary of his land extending across such a way, or by subsequently placing palings 3 or 4 feet high on top of this fence. Such fence is not a permanent structure, but could be removed with hardly any trouble or expense. It would serve to keep the owners' animals from escaping and the animals of his neighbors from entering upon his land . . . the structure is so light and so easily removed, that it is far from being sufficient of itself to prove an abandonment of the easement'". Jones on Easements (1898) p. 683. American Brass Co. v. Serra, supra at 149.
In this case the fence was not only easily removable but became fully accessible through the subsequent installation of a pair of hinged gates. To regain use of the driveway would not necessitate removal of the grass but would require removal of the plantings only, which from the evidence appear to be easily transplantable. As in the American Brass Co. case the structures were erected upon mutual consent of the owners and fall far short of proving an intent to renounce or abandon. Pizzuto v. Newington,174 Conn. 282, 284 (1978).
The court finds that the defendants enjoy an express right of way over lot number 3 for all purposes of travel as reserved in the deed from Otto to Coyne recorded in Book 811 at page 89.
THE DUBOIS PROPERTY
In 1906, William Wood owned the 9.7 acre tract, the Dubois property and lots 1, 2 and 3. In that year, Wood conveyed the Dubois property to Johnson. In the deed, the grantor reserved to himself "his heirs and grantees and to those to whom he has heretofore conveyed land in the neighborhood the right to use said private roads or driftways for any purpose for which [he] can now CT Page 9172 use the same . . .".
In a deed from Elizabeth Gibson Dubois to herself and her husband, J. Delafield Dubois dated 1959, the southerly property line is described as the center line of a private road. The rights of other property owners to use this private road are not mentioned. In the deed from Tobeason to Maginnis no mention was made of the easement reserved in the Dubois deed. However, the property was conveyed "with the appurtenances thereof unto her the said grantee, her heirs and assigns." When in 1954 Tobeason sold what is now the defendants' property to Marshall he conveyed "together with the appurtenances and all rights and interest in and to the private roads or driftways leading to or adjoining said premises" which would have included the right of way over the Dubois property. In 1956 Marshall acquired lot number 3 from Mayer. When Marshall sold both lot number 3 and the defendants' property to Otto, the deed recited "together with the appurtenances . . . and all rights and interest in and to the private roads or driftways leading to or adjoining said premises." By this language the grantee acquired the same right of way over Dubois. In the deed from Otto to the defendants the same language was repeated. Thus the defendants acquired a right of way over Dubois in an unbroken chain from Wood. The anomaly created by the Tobeason/Maginnis agreement is that from 1952 to 1991 the owners of the 9.7 acre tract now owned by the defendant had an express easement over lot number 3 and the Dubois property but had no rights over lot number 1. Apparently, such a situation did not interfere with the ability of the defendants' property to use the driveway to reach Indian Field Road. According to the evidence the driveway was used regularly for vehicular traffic and if Exhibits 13 and 19 are any guide, after these vehicles left lot number 3 on their way to Indian Field Road they could not have confined their travel to the Dubois property because the driveway was too narrow at that point. So while as a technical matter the easement over lot number 3 may have been an easement to nowhere, as a practical matter it got the defendants to the Dubois property over which they had a valid easement.
The plaintiffs assert that the Tobeason/Maginnis agreement destroyed the Dubois right of way as an appurtenance to the defendants property because the agreement separated the dominant estate from the Dubois right of way. Detachment of an easement from the dominant estate does not "destroy the easement as appurtenant to it, or deprive it of the benefit of the easement as appurtenant to it, or deprive it of the benefit of the easement CT Page 9173 insofar as there might exist means for its enjoyment". Alling Realty Co., 92 Conn. 241, 251 (1916). "A way from one close to and through another is nonetheless appurtenant to the former if it run over the intervening lands of numerous proprietors". Graham v. Walker, 78 Conn. 130, 135 (1905). See, Fisk v. Ley, 67 Conn. 295
(1903). If a right of way can be enjoyed even if not adjacent to the dominant estate, then the servient estate can be located at considerable distance from the dominant estate. Graham, supra at 135. In this case the right of way over the Dubois property was clearly useful and valuable to the defendants' property as evidenced by its actual use by the defendants. Therefore the easement is appurtenant.
Finally, to the extent possible the width of the right of way remains to be determined.
In the Wood to Johnson deed, Wood reserved to himself "his heirs and grantees and to those to whom he has heretofore conveyed land in the neighborhood the right to use said private roads or driftways for any purpose" (emphasis added) for which Wood could use the same. The right of way located on the southerly 13 foot strip of the Dubois property can be limited to the then existing travelled way. Likewise, the easement located on the northerly 13 feet of lot 3 was limited in the deed from Otto to Coyne to "the existing driveway". if the right of way is over an existing way it may be limited to the way as it then existed if the width is reasonably sufficient. 25 Am.Jur. Sec. 78 at 484. "Where a way is granted over a piece of land of a certain stated width, it would depend on the circumstances of the case whether the reference is to the width of the way or is merely descriptive of the property over which the grantee may have such a way as it may be reasonably necessary. Ordinarily, however, a grant or reservation of a right of way `over' a particular strip of ground is not to be construed as providing for a way as broad as the ground referred to. A reference in the instrument to the purpose of the way is doubtless of aid in determining the width of the way". 25 Am.Jur. Sec. 78 at 485. "A right of way granted in general terms is limited to a way of the width and location actually taken and used by the grantee of the right." Richardson v. Turnbridge, supra at 96. If the easement is not specifically defined, the rule is that the easement is only such as is reasonably necessary and convenient for the purpose for which it was created. Pudin v. Moses, 20 Conn. Sup. 311,313 (1957). In Wilson v. DeGenaro, 36 Conn. Sup. 200 (1979), the deed reserved a right of way "as now laid out". The court held that the right of way is limited to the existing way unless either CT Page 9174 party can prove that the way at the time of the reservation exceeded the present width. Application of these principles to the facts of this case support a finding that the right of way over the Dubois property is limited to the existing driveway.
In view of the foregoing, the issues are found for the defendants on the plaintiffs' third amended complaint, for the defendants on the third party defendant Dubois's, cross complaint and on both of the defendants' special defenses.
MOTTOLESE, J.