MINER R. KNOWLTON vs. THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In 1847 C, under whom the plaintiff claimed, conveyed to the defend-
ant a strip of land four rods wide, running east and west through
a nine acre tract which was bounded on the south by a highway,
the deed providing that the grantee should build a crossing over
its railroad, thereafter to be constructed, " to pass to the back land
with cart or otherwise." Until 1880 the two parcels on either side
of the railway were owned by the same person, but thereafter by
different proprietors. In 1893 the defendant closed the crossing,
which it had built and maintained since the opening of its road.
Held : —

1. That the clause in C's deed relating to a crossing was not an excep-
tion but a reservation, since it excluded nothing from the estate
granted but created a duty upon the part of the railroad company
which previously had no existence.

2. That inasmuch as the sole purpose of the crossing was to enable the
owner of both parcels, when separated by the railway, to pass from
one part of his farm to the other, the reservation must be construed
to inure to the benefit of C's heirs and assigns so long as there was
unity of ownership in the two parcels, but no longer; and conse-
quently the obligation of the defendant to permit the use of the
crossing ceased in 1880 when the title was severed.

Whether a reservation without words of limitation inures to the benefit
of successors in title, is to be determined by the language employed,
read in the light of the surrounding circumstances.

If the only evidence of the situation of a tract of land is that contained
in deeds which describe it as bounded on all sides by lands of pri-
vate owners and disclose no rights of way, it is error for the trial
court to refuse to find that it was in fact so surrounded and inac-
cessible except so far as a way of necessity might be provided
by law.

A court may take judicial notice, as of an historical fact, of the time
when a trunk railroad within its jurisdiction was opened for pub-
lic use.

A user authorized by deed cannot form the basis of a prescriptive
right.

A deed provided that " any rights of way that may exist " in favor of
the grantor over adjoining land were " to extend over the land
herein conveyed," and that this conveyance is " not to affect any
such rights." Held that the grantee was not estopped from deny-
ing the existence of any right of way.

Where the correctness of a judgment depends upon the legal effect of a clause in a deed, the terms of which, as well as the situation of the premises and the acts of the parties in the nature of a practical construction, are all detailed in the record, this court in determining such a question on appeal will not be bound by the opinion of the court below merely because that rests in part on the circumstances attending the transaction, as set forth in the finding.

Argued June 13th—decided August 1st, 1899.

ACTION to recover damages for closing a farm crossing over the road-bed and tracks of the defendant, brought to the Superior Court in Fairfield County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings and findings of the court. *Error and judgment reversed.*

These facts appeared from the finding: In 1847 Philo Curtis, owning a nine acre tract of land in Stratford, bounded southerly on a highway, conveyed a strip four rods wide, running east and west across the middle of it, to the New York & New Haven Railroad Company. After the description of the granted premises in the deed came these words: " Reference being had to map No. 8, said company to build a crossing over said railroad to pass to the back land with cart or otherwise. And furthermore I, the said grantor, do for myself and my heirs and assigns, hereby covenant and agree with the said company and its assigns forever, to erect and maintain forever all such fences as may be necessary upon the lines between the land hereby conveyed and the land adjoining the same now owned by said Curtis."

The grantor had no access to the highway mentioned from his land north of the strip conveyed, except across the latter. It did not appear from the evidence whether there were other means of access to the back lot, and therefore it was not found that any way of necessity arose upon the conveyance. Nor did it appear from the evidence when the railroad was built; but if the court could take judicial notice of it as an historic fact, the railroad was completed and opened from New Haven to New York by January 1st, 1849. A proper

farm crossing was constructed by the grantee when the railroad was built, and kept planked ever after, except during the winter months, until 1893. Every winter the grantee and its successor in title, the defendant, took up this planking, replacing it in the spring; and the crossing was used annually as a farm crossing, as often as necessary for farm purposes, without interruption by the grantor's successors in title, under a claim of right, until September, 1893, when the defendant raised its road-bed ten feet and replaced the old barway by a tight fence.

Curtis conveyed both parcels to George Pratt in June, 1848. In 1880, one Booth, to whom they had come through sundry mesne conveyances, conveyed the southerly parcel to one Chambers. In 1885 he conveyed the northerly parcel to Danforth Knowlton, with other land adjoining it on the north and bounded on a highway, and the plaintiff acquired the same premises soon afterwards.

Down to September, 1893, all parties to the title believed and acted on the belief that the plaintiff and his grantors had full right to use the crossing as a farm crossing, by virtue of the Curtis deed of 1847. In July, 1893, the plaintiff conveyed to the defendant a strip of land adjoining the railroad on the north, being part of the original northerly parcel owned by Curtis, the deed containing this proviso: "Provided, however, that any rights of way or farm crossing that may exist in favor of said Knowlton over said railroad, shall extend over the land herein conveyed from said railroad to the land of the grantor, and this conveyance is not to affect any such rights. The grantee is to build a divisional fence along this strip, and make any necessary ditches and culverts, or any retaining walls that may be necessary by the acts of the grantor."

The court found that unless the facts above set forth showed that the plaintiff had the right to use said crossing by virtue of the Curtis deed, and prevented the finding that the use of this crossing by the plaintiff and his grantors was adverse, such use since the railroad was built and since the plaintiff and his grantors ceased to have any legal right by

virtue of said deed to use said crossing, had been an adverse use by the plaintiff and his grantors; and, as an inference of fact from the foregoing facts, that the parties intended by the provision in the Curtis deed to retain in him not a temporary and personal, but a permanent right, for the benefit of the premises he continued to hold, and that such right was intended to be appurtenant to the said premises and vest in said Curtis, his heirs and assigns; that said passway and crossing were necessary to the enjoyment of said premises retained by Curtis, and from the time the railroad was laid out down to the preventing plaintiff using said crossing, were open, visible—such as would be apparent to an ordinary observer and such as naturally and necessarily belonged to said premises; that, as an inference of fact from the foregoing facts, the defendant had notice of the use made of this crossing by the various grantors subsequent to Curtis, under claim of right, and that as a matter of law the public records were notice to defendant that the use was not personal to Curtis after his conveyance to Pratt; that no actual notice was brought home to defendant of these facts except as stated herein; that from these facts, as matter of law, this crossing became annexed to and appurtenant to said premises; that the language in the Curtis deed created an exception; that if this was not true as a matter of law the plaintiff acquired a title by prescription in said crossing; and that no claim of adverse user was made to the defendant by any of these grantors, so far as appeared in evidence.

The defendant claimed on the trial that a way of necessity was created in 1847 across the land Curtis conveyed to the railroad company, and that this way ceased upon the acquisition by Danforth Knowlton, in 1885, of the adjoining land on the north running to a highway; that the clause respecting the crossing in the Curtis deed did not amount either to a reservation or an exception, but at most to a license to Curtis and his successors in interest; and that a disclaimer was necessary before any claim by adverse user could be set up. These claims were overruled.

Curtis had acquired title to the original tract, containing

nine acres, in 1825, the deed describing it as bounded southerly on a highway and in all other directions on land of private owners. The same boundaries were followed in his deed of 1847 to the railroad company, and of 1848 to George Pratt. The defendant claimed that from these deeds (there being no other evidence to qualify or explain these boundaries) it was entitled to a finding that the parcel north of the railroad did not bound on any highway and had no means of access to any, except by passing over the southerly parcel to the highway on which that was bounded. The court refused to make such a finding, and this refusal was made one ground of appeal.

*William D. Bishop, Jr.*, and *William B. Boardman*, for the appellant (defendant).

*Stiles Judson, Jr.*, for the appellee (plaintiff).

BALDWIN, J. The clause in the deed of 1847 by Curtis to the railroad company respecting a crossing, could not constitute an exception. The office of a provision of that description is to exclude from the grant and retain to the grantor some portion of his estate; whatever is thus excluded remaining in him as of his former right and title, because it is not granted. *Chappell* v. *New York, N. H. & H. R. Co.*, 62 Conn. 195, 207. A reservation, on the other hand, is a new creation of something not previously existing. *Barnes* v. *Burt*, 38 Conn. 541. The grantee under the deed was subjected by its terms to the duty of building a crossing over the proposed railroad, to be used " to pass to the back land with cart or otherwise." The railroad was yet to be constructed. Whatever was thus to be done was to be done as a new thing in the future, and the words in question therefore are to be construed as a reservation.

Whether a reservation without words of limitation inures to the benefit of successors in title, is to be determined from the language employed, read in the light of the surrounding circumstances. One material circumstance was the situation in which the construction of the railroad would leave the back

lot. Would there be any other means of access to it than that over the strip of land granted? As bearing on this point, the defendant's exception is well taken to the refusal of the trial court to find that this northerly parcel was surrounded on all sides by lands of private owners, across which it had no appurtenant rights of way. The only evidence as to this, adduced by either party, was the three deeds to and from Curtis. These disclosed no rights of way, and none were to be presumed. No other conclusion could be legally drawn from them than that the back lot was left by the deed in an inaccessible condition, except so far as either the deed itself or the law provided otherwise. No harm, however, was done to the defendant by the refusal to find this fact. If a way of necessity existed in favor of the back lot, it ceased when the necessity ceased, and that was when Danforth Knowlton, in 1885, acquired title to the adjoining land to the northward, bounding on a highway.

But whether one ever existed or not, did not affect the duty of the railroad company under the deed. The terms of that instrument required of it the construction of a crossing for a single purpose, and that was to allow some one, not named, " to pass to the back land with cart or otherwise." This reference to the " back land " naturally imports that the reservation was for the benefit of the owner of both lots, to enable him to go from one part of his farm to another. It was not a way between the back lot and the highway that the parties had in mind, but one between the back lot and the front lot. So long as there was unity of ownership as respects these two parcels, such a way was reserved to the grantor and his heirs or assigns. To limit it to his life would not satisfy the obvious purpose of the conveyance. But when the title was severed by the conveyance of the front lot by Booth to Chambers in 1880, the obligation of the railroad company to permit the use of the crossing came to an end. The two lots were thenceforth held by different owners, and there could be no occasion to go as a matter of right from one to the other.

The adverse user by Booth and his assigns since 1880 is

unimportant, as it was stopped by the act of the defendant which is complained of, before the lapse of fifteen years.

The Superior Court had the right to take judicial notice of the historic fact that the railroad between New Haven and New York was opened by January 1st, 1849. The opening of a trunk railroad for public use is one of those events of public notoriety which are to be taken as known by the courts because they are known to everybody. It is a great geographical change, like the bursting out of a new river from the earth, to serve as a highway of commerce in new directions. But the user of the crossing after that date down to 1880 could found no prescriptive right, since it was authorized by the Curtis deed.

The reference in the deed of July, 1893, from the plaintiff to the defendant, to "any right of way or farm crossing that may exist" in his favor over the railroad, did not estop the defendant from denying that there was any such a right. Not only is it spoken of merely as something that "may" exist, but this is coupled with the provision, equally operative in favor of both parties, that the "conveyance is not to affect any such rights."

It is urged that the trial court has found as a fact that the intent of the Curtis deed was to retain in him and his heirs and assigns a permanent right of way over the railroad as an appurtenance to the land on each side of the granted premises, and that such an inference of fact from other facts is not the subject of review on appeal. The judgment obtained by the plaintiff is finally rested by the finding in the alternative upon one or the other of two inconsistent grounds: either that the provision in the Curtis deed as to a crossing constituted an exception, or, if this be not so, that the plaintiff had a prescriptive title by adverse use. These are expressly stated to be conclusions of law, and the preliminary finding as to a right of way under the Curtis deed, appurtenant to the entire premises, while described as an inference of fact, is essentially one of law, for it must be read in connection with the final adjudication that this right is of the character of an exception. The terms of the deed are before us, and

also the situation of the premises and the acts of the parties in the nature of a practical construction of the right reserved. The main question is as to the meaning of the words they used, and proceedings in error would often be but an illusory remedy, were an appellate court to be considered as bound, in determining such a question, by the opinion of the court below, whenever that is based in part on circumstances attending or following the transaction, notwithstanding these are fully spread upon the record.    *Whitman* v. *Winchester Arms Co.*, 55 Conn. 247, 249; *Nolan* v. *New York, N. H. & H. R. Co.*, 70 id. 159, 174, 176.

There is error and the judgment is reversed.

In this opinion the other judges concurred.