## THEODORE F. MAYHEW
vs.
## RUBY WILLIAMS KLEIN

Superior Court        Fairfield County        File #51935

Present:  Hon. FRANK P. McEVOY, Judge.

Lazarus D. Heyman,            Attorney for the Plaintiff.

Ives & Sherwood,            Attorneys for the Defendant.

**MEMORANDUM FILED JANUARY 21, 1938.**

McEVOY, J. The parties own adjoining lands in the Town of Bethel, Connecticut.

In 1871 Abram Hoyt, the predecessor in title of the defendant, conveyed by deed to a railroad company the premises now owned by the plaintiff. That deed contained this provision:

"Reserving to myself the use of the spring near the northeast corner of said lot, and the dwelling house and barn to remain as at present located."

The matter is now in court because, in 1934, the plaintiff commenced work on the spring and the net result was to prevent the defendant from making any use of the spring. Correspondingly, the defendant filled up a ditch made by the plaintiff so as to prevent the spring from being drained. All of which resulted in the usual turmoil incident to neighborly disputes.

The plaintiff seeks a dual injunction to prevent the defendant from "interfering in any manner with plaintiff's work on this spring" and also to restrain the defendant from using the

spring "for any purpose whatsoever".

The defendant has filed a counterclaim in which she seeks to have the plaintiff enjoined from interfering with her proper use of the spring by taking water from it and also to enjoin the plaintiff from draining the spring to her detriment.

Although many claims are made pro and con the solution seems simple. When Hoyt, the defendant's predecessor in title, conveyed to the railroad company, while he conveyed the land upon which the spring was and is located, he expressly reserved the use of the spring. Unfortunately he used the words "to myself" in the reservation, thus bringing about all the present trouble because the plaintiff now claims Hoyt in-tended to have the use personal to him and that use did not "run with the land" nor did it inure to the benefit of the defendant.

"In respect to whether a reservation is of a perpetual interest like a fee in the easement reserved, the question seems to turn upon whether it is a personal right, an easement in gross, or one for the benefit of the principal estate, whoever may be its owner. In the latter case it is held to be a permanent right, appurtenant to the principal estate in the hands of successors and assigns without words of limitation. . . . The question whether the easement is 'for the benefit of the principal estate, whoever may be its owner', is to be determined from the in-tent of the parties as gathered from the language employed to express it, read in the light of the surrounding circumstances. . . . 'What did the parties intend by the reservation in ques-tion? And for the purpose of ascertaining the intention it is proper to take into consideration the condition of the property, and the circumstances of the parties in relation thereto. . . . The objection is that the use is reserved to them without nam-ing heirs and assigns. . . . It is true that the right is reserved to them without words of inheritance and without naming their assigns. But it becomes material to enquire for what purpose the reservation was made'." **Chappell vs. N. Y., N. H. & H. R. R. Co., 62 Conn. 195, 204.**

"An easement . . . will never be presumed to be personal when it can fairly be construed to be appurtenant to land." **Blanchard vs. Maxson, 84 Conn. 429, 433; Knowlton vs. N. Y., N.H. & H. R. R. Co., 72 Conn. 188, 194.**

". . . whether we call this provision an exception or a reser-vation, or an agreement. . . . was entitled to have the right de-

scribed in such provision." **City of New Haven vs. Hotchkiss, 77 Conn. 168, 174.**

Upon all of the evidence it plainly appears that the defendant and her predecessors in title have continuously used and continuously claimed the right to use the spring for at least sixty-five years prior to the institution of this action.

Upon the trial and in the briefs serious discussion was had as to whether the plaintiff's grantor, the railroad company, was "ousted" under the provisions of **section 5020 of the General Statutes, Revision of 1930,** at the time of the conveyance by the railroad company to the plaintiff. Whether or not it was so "ousted" is not pertinent to the decision of this case because:

When the defendant's predecessor in title, Hoyt, conveyed to the plaintiff's grantor, the railroad company, the latter accepted its deed with the express knowledge that Hoyt had no water supply other than the spring and it was for that very reason that he reserved the right to use the spring—as distinguished from the ownership of the spring and the land upon which it was located. That was the only reason for the reservation of the use of it. The railroad company never denied the right to use it nor was any attempt made to interfere in any way with the use of the spring by the defendant or her predecessors in title until in 1934 when the plaintiff began his work. The railroad company could not be ousted of what it did not have or claim to have.

"A person can with no propriety of expression be said to be disseised of a right for the recovery of which a personal action only lies; but of such only as may be restored to him by action of ejectment or real action; these are the only actions which will lie in favour of a person disseised, or ousted, to regain possession. . . . As well might it be pretended that a man, by filling a ditch in his own land, and thereby preventing the water from draining off from his neighbour's land . . . thereby prevented his neighbour from selling the land with the right to drain off the water by the ditch . . ." **Sherwood vs. Burr, 4 Day 244, 248.**

The plaintiff's actions, viewed, as they must be, in connection with his letters to the defendant, show that the plaintiff's real purpose in his work in and about the spring was to prevent the defendant from in any way using it and thus to require the defendant to pay to the plaintiff a monthly rental for the use of the spring. In an attempt to justify this attitude

the plaintiff now claims that, when he purchased his property, he was unaware of the use of the spring by the defendant. A fair consideration of the evidence makes this claim untenable because, at that time, the plaintiff could, and probably did, observe the well-worn path leading from the defendant's house to the spring; the wooden steps, dilapidated as they were, and other indicia of use and the fact that the defendant then had no other source of water supply. Of course, upon the evidence, the defendant now has no other source of water supply.

The issues are found in favor of the defendant upon the plaintiff's complaint and upon the defendant's counterclaim.

While there is no evidence of specific damage in dollars and cents, to the defendant, yet it is plainly apparent that the defendant was damaged by the plaintiff's action. It further appears that the defendant was justified in what she did in and about the spring as she was merely attempting to preserve a use which she and her predecessors uninterruptedly and without objection enjoyed for nearly seventy years.

A judgment may be entered in favor of the defendant to recover of the plaintiff $25.00 damages. A decree may be entered that the plaintiff be enjoined from interfering with the defendant in reasonable use of the spring and so that she may reasonably take water therefrom, and further, the plaintiff is restrained from so draining this spring that the defendant will be unduly interfered with in obtaining water from the spring.

Judgment may enter accordingly.