[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an application for a temporary and permanent injunction surrounding the erection of a fence between two parcels of property on Moody Bridge Road, Washington Depot, Connecticut. The parties agreed to consolidate the action and the court heard the parties on all causes of actions and counterclaims. The plaintiffs filed a three count complaint alleging (1) that the fence that was built by the defendants is unattractive and a nuisance; (2) intentional infliction of emotional distress; and (3) that the fence is a spite fence. In addition to injunctive relief, the plaintiffs seek money damages. The defendants have counterclaimed that the plaintiffs did not acquire the right to use the subject parking area, referred to as Parking for Parcel A on a map which is marked as Plaintiffs' Exhibit 3.
The plaintiffs purchased the property with the expectation that the parking area, which is presently surrounded by a fence on three sides, was for their use. The property consisted of a home located reasonably close to the neighbors' home, which is smaller but downhill of the subject plaintiffs' residence. The fence is higher than the bottom of the first floor windows of the plaintiffs' property, and is obvious outside the bay window on the southern side of the house.
On cross-examination, the plaintiffs conceded that the fence was entirely on the defendants' property. Mr. Brabant also indicated that if the children climbed on the fence that they would be trespassing, and he would certainly not allow them to trespass on their neighbors' property. The plaintiff, Geoffrey Brabant, agreed that all of the fence posts were on the defendants' property.
The defendants offered a photograph (Def. Exh. 18) which shows one of the plaintiffs' children and a friend walking along Moody Bridge Road, the witness thought, to the bus. The defendant also proffered two photographs of the plaintiff-wife walking on that road. Defendants proffer other photos of the plaintiff-wife on the road. The road is a narrow country road, virtually a single lane, and is between one-third (1/3) to one-half (1/2) CT Page 5284-SSSSS mile with only two homes on the road, the plaintiffs' and the defendants'.
The photographic evidence from both the plaintiffs and the defendants display a proximity of houses which belies the rural nature of the rest of their environment. The proximity is obviously a sore point, but the plaintiffs purchased their home knowing the footprints of both houses. They allege that since the purchase of the property next door by the defendants approximately three (3) years ago, various disagreements have existed between the parties. The plaintiffs agree that a letter seemed to quiet those disagreements, but thereafter, the fence was built.
The plaintiffs called Donald Stern of Bristol, a real estate appraiser. He reviewed the value of the property as it may have been affected by the erection of the fence. The value prior to the erection was offered as one hundred, seventy thousand ($170,000.00) dollars, and thereafter one hundred, sixty-seven thousand ($167,000.00), a diminution in value of three thousand ($3,000.00) Dollars. On cross-examination, the witness testified that it is the safety issue which devalues that property, based upon the fact that the property owners have to walk onto the road, and around the fence to access their automobiles. The witness was asked if the children walking along the road to the school bus created that same diminution in value, and he replied no.
The plaintiffs called Attorney Ann Fisher, who was qualified as a real estate attorney. She was admitted to the Bar of the State of Connecticut in May of 1979, and was associated with a firm for the first four (4) years of her practice, whereupon she began a sole practice. She has been qualified as a real estate expert in the Litchfield and Danbury Judicial Districts, where she was retained to testify concerning real estate matters. She was asked to identify the deeds and maps, Plaintiffs' 1 through 3 inclusive. Her opinion is that the deed from the estate of Ann Mahoney to Jean Mahoney to the McCarthys was subject to the right to exclusively use the parking area A. (Plaintiffs' Exh. 3) Her opinion further was that that right ran with the land.
On cross-examination, she agreed that none of the documents which were made exhibits at trial gave defendants any rights from the estate of Ann Mahoney. Plaintiffs' Exhibit 1 on the bottom of the first page, reserves the right to exclusively use the parking CT Page 5284-TTTTT area A to the grantor herein (Estate of Ann Mahoney) or its devisees, or assigns. Defendants claim that those are not words of inheritance, insofar as the word "heirs" is omitted. There is no specific reference to a devisee other than a devisee of the estate of Ann Mahoney. The rights of the Brabants are no greater than the rights described in their deed. On redirect, Plaintiffs' Exh. 2 is a warranty deed, which contains the following language:
 RICHARD MAHONEY of Moody Bridge Road Washington Depot, Connecticut 06794 for consideration paid, Seventy-Three Thousand ($73,000.00) Dollars, grant to: GEOFREY T. BRABANT AND KAREN J. WICKLUND-BRABANT, of 10-B-12 Scuppo Road Danbury, Connecticut 06810, as joint tenants with WARRANTY COVENANTS
 A parcel of land as described herein in SCHEDULE A and made part hereof.
 SCHEDULE A
 A certain piece or parcel of land situated in the Town of Washington, County of Litchfield, State of Connecticut being shown as Parcel A containing 9.669 sq. ft. 0.222 acres on map entitled "Map Prepared for Ann J. Mahoney Moody Bridge Road Washington, Conn. Scale 1" = 20' October 1980" and which map is filed in the Office of the Town Clerk of Washington.
 Together with a utility right of way recorded in Volume 93, page 52 of the Town of Washington Land Records and together with all rights reserved in a Deed from the Estate of Ann J. Mahoney to Jean A. Mahoney dated November 24, 1981 and recorded in Volume 93, page 48 of the Town of Washington Land Records and subject to rights conveyed in said November 24, 1981 Deed.
The reservation contained in the deed wherein the grantor was the estate of Ann Mahoney and the grantee was Jean Mahoney (Plaintiff's exhibit 1) contains the following language:
Reserving to the grantor herein, its devisees and assigns: . . . . 2. The exclusive right to use the area shown on said map as Parking A for the parking of motor vehicles. . . . CT Page 5284-UUUUU (Plaintiffs' exhibit 1). The plaintiffs' expert, Attorney Ann Fisher, testified that in her opinion, Richard Mahoney was a devisee of the estate of Ann Mahoney.[1]
The defendant called William F. McCarthy, a defendant in this action. He is the son of the owner of "Parcel B" and a resident of that home with his wife and two sons. He indicated that the parking area which is the subject of this action is eight feet from their home, and that the use of that area by the plaintiffs creates noise, exhaust pollution, and disrupts the sleep habits of the children. On cross-examination, the witness was asked why the fence encircled the entire parking area. He maintained that the fence was erected as it was to prevent the plaintiffs from trespassing on his property.
He admitted that he built the fence without consultation with his neighbors. He admitted it was not a snow fence. The witness refused to agree that it was a spite fence. He has been building the fence since last spring. He would not agree that the fence was built to harass the plaintiffs.
The issue in this case is whether the plaintiffs are entitled to the exclusive right to use the parking area designated as Parking Area A on Map 659 on record in the Washington Town Clerk's Office, a certified copy of which was proffered by the plaintiffs as Exhibit 4. In other words, the issue is whether the reservation in a deed from the estate of Anne Mahoney to Jean Mahoney created an easement appurtenant or an easement in gross. Once this issue is resolved, the questions remaining are (1) whether the fence is a nuisance; (2) whether the defendants caused the plaintiffs to suffer emotional distress; and (3) whether the fence is a spite fence.[2] The issues of damages and injunctive relief turn upon the outcome of these issues.
DISCUSSION
I. Whether the easement is appurtenant or in gross
"An easement in gross belongs to the owner of it apart from his ownership or possession of any specific land and, in contrast to an easement appurtenant, its ownership is personal to its owners. . . . If the easement is in its nature an appropriate and useful adjunct to the land conveyed, with nothing to show that the parties intended it to be a mere personal right, then it is an easement appurtenant. . . . An easement appurtenant must have CT Page 5284-VVVVV a dominant estate that enjoys the benefit of the right-of-way and a servient estate that bears the burden. Such an easement can become legally attached to the dominant estate only if the same person owns both the right-of-way and the dominant estate. . . . While an easement appurtenant must be of benefit to the dominant estate, the servient estate need not be adjacent to the dominant estate." (Citations omitted.) Dean v. Riley, 31 Conn. App. 87,90-91, 623 A.2d 521 (1993); Stiefel v. Lindemann, 33 Conn. App. 799,805 n. 4, 638 A.2d 642, cert. denied, 229 Conn. 914, ___ A.2d ___ (1994). "An easement . . . will never be presumed to be personal when it can fairly be construed to be appurtenant to land." Blanchard v. Maxson, 84 Conn. 429, 433, 80 A. 206 (1911);Knowlton v. N.Y., N.H. H.R. R. Co., 72 Conn. 188, 194, 44 A. 8
(1899). "The question of whether an easement is appurtenant or in gross is resolved by ascertaining the intent of the parties as expressed in the deed. . . . This intent is determined by considering the language and the relevant provisions of the deed in light of the then existing situation of the property and the current surrounding circumstances. . . . The determination of the intent expressed in a deed presents a question of law. Carbone v.Vigliotti, 222 Conn. 216, 222, 610 A.2d 565 (1992)." (Citations omitted.) Steifel v. Lindeman, supra, 33 Conn. 805-06.
Connecticut courts have consistently held that if in the reservation of an easement no mention is made of the heirs and assigns of the grantor a "presumption is created that the intent of the parties was that merely a personal right of way was reserved. This presumption however is not conclusive." Kelley v.Ivler, 187 Conn. 31, 39, 450 A.2d 817 (1982). Instead, the presumption is rebuttable. Steifel v. Lindemann, supra, 33 Conn. App. 806. "An easement of way will never be presumed to be personal when it can fairly be construed to be appurtenant to the land." Kelley v. Ivler, supra, 187 Conn. 42. "The reservation will be interpreted as creating an appurtenant easement if it appears, from the surrounding circumstances and other relevant provisions in the deed, that the parties intended the easement to run with the land. . . . Several factors may rebut the presumption. They are (1) whether the language of the reservation indicates that the easement is intended to run with the land, (2) whether the easement is of value to the dominant estate itself, and (3) whether the owner of the servient estate recognized the right of the subsequent owners of the dominant estate to use the easement. . . ." (Citations omitted.) Steifel v. Lindemann,
supra, 33 Conn. App. 806-07. The court, however, finds that the language of the easement contains words of inheritance and CT Page 5284-WWWWW therefore, the easement is appurtenant.
In the present case, the defendants argue that the easement is presumed to be in gross because it does not use the language "heirs." The reservation in the deeds proffered by the plaintiff use the following language: "Reserving to the grantor herein, its devisees or assigns: . . . (2) The exclusive right to use the area shown on said map as "Parking A" for the parking of motor vehicles." (Plaintiffs' Exhibit 1.) The court agrees that the word "heirs" is excluded from the reservation, however, it is the opinion of this court that the words "devisees[3] and assigns" are words of inheritance. If Richard Mahoney was a devisee of the estate of Ann Mahoney, then the deed from Richard Mahoney to the plaintiffs, by virtue of its wording as set forth above, simply passes the reservation to the Brabants. In the words of the plaintiffs' expert, Attorney Fisher, "the Brabants acquired the exclusive right to use [the] parking space by virtue of their deed from Richard Mahoney who, in turn, acquired those rights when he inherited the property through a certificate of devise from the estate of Ann Mahoney." (Defendants' Post Trial Memorandum Exhibit B p. 6.) Richard Mahoney was a devisee of the estate of Anne Mahoney as evidenced by the certificate of devise. Additionally, in the transfer of land from the estate of Anne Mahoney to Jean Mahoney, the defendants predecessor in interest, rights to the parking area were reserved to devisees of the estate of Anne Mahoney, in this case, Richard Mahoney.[4] The warranty deed from Richard Mahoney, grantor, to the plaintiffs, grantees, passes on the rights reserved to Richard Mahoney as devisee to the plaintiffs. As stated above, "[a]n easement of way will never be presumed to be personal when it can fairly be construed to be appurtenant to the land." Kelly v. Ivler, supra,187 Conn. 42. The court is therefore of the opinion that the language of the reservation indicates that the easement was intended to run with the land.
Even if the court determined that words of inheritance were lacking, the court's determination that the easement is appurtenant would not change.[5] Under the three prong test used to rebut a presumption that an easement is in gross when words of inheritance are lacking, the court first determines the "intent of the parties as expressed in the deed." Here, the court finds the intent of the parties was to give the right of the reservation to the estate of Anne Mahoney and its devisees. Richard Mahoney was clearly a devisee by the language of the devise and the rights reserved in the deed passing the defendants CT Page 5284-XXXXX property to its predecessor in interest, Jean Mahoney, indicates that the easement was intended to run with the land. Steifel v.Lindemann, supra, 33 Conn. App. 806-07.
As to the second factor used to rebut the presumption that the easement is personal, that being "whether the easement is of value to the dominant estate itself," the court heard the testimony of the plaintiffs' expert, Donald Stern, a real estate appraiser. Stiefel v. Lindemann, supra, 33 Conn. App. 807. As stated above, Mr. Stern reviewed the value of the property as it may have been affected by the erection of the fence. The value prior to the erection of the fence was offered as one hundred, seventy thousand ($170,000.00) dollars, and thereafter one hundred, sixty-seven thousand ($167,000.00), a diminution in value of three thousand ($3,000.00) Dollars. On cross-examination, the witness testified that it is the safety issue which devalues that property, based upon the fact that the property owners have to walk onto the road, and around the fence to access their automobiles. The witness was asked if the children walking along the road to the school bus created that same diminution in value, and he replied no. Although the court finds that the testimony of Mr. Stern was conflicting, the court is of the opinion that the testimony of Mr. Stern established that the easement is of value to the dominant land. Even the photographs of the two properties that were proffered as exhibits by both parties would support this proposition because the plaintiffs would have no where to park, except in the road, were they unable to park in the parking area in dispute. If the plaintiffs wanted to park their vehicles on the dominant estate, there is only a very limited area where they could do so which at most appeared to allow only a single car to park.
In terms of the third factor that may be used to rebut the presumption that the easement is personal, the court finds that the defendants were on notice of the easement as set forth on the deed signed by the McCarthys. Also, the owners of the servient estate, the McCarthys, recognized the right of the owners of the dominant estate to exercise the easement. Birdsey v. Kosienski,140 Conn. 403, 411, 101 A.2d 274 (1953); Leabo v. Leninski,182 Conn. 611, 615, 438 A.2d 1153 (1981). Relevant to this point is the testimony that the parties have been living next to each other for at least three years and although they quarreled, the defendants never stopped the plaintiffs from parking on the property. Even the fence is three sided allowing ingress and egress albeit by way of stepping into the road but if the CT Page 5284-YYYYY defendants had did not recognize some right in the plaintiffs to park on their parcel, the court is certain that there would have been no ingress or egress, in other words, the fence would have had four sides and probably a lock on the gate. The chain of title from Jean McCarthy to the present indicates that the property was subject to the parking reservation, including the deed executed by the defendants at the time of their purchase.
After considering the language of the reservation and the other relevant provisions of the deed in light of the surrounding circumstances, the court concludes that the presumption that the easement is personal is rebutted. In fact, in light of the court's conclusion that the "devisees and assigns" were words of inheritance, the above discussion of factors that rebut the presumption that an easement is in gross was not necessary to its decision, however, the court discussed these factors to address the arguments raised by the parties and to clarify any ambiguity in the words of the reservation.
In summary, for the reasons set forth above, the court denies the McCarthys the affirmative relief they sought in the counterclaim and finds that the property at issue is subject to the parking rights claimed by the Brabants.
II. Nuisance
There are two classifications of nuisance recognized in Connecticut: public and private. "Nuisance is a word often very loosely used; it has been not inaptly described as `a catch-all of ill-defined rights.' Gonchar v. Kelson, 114 Conn. 262, 271,158 A. 545 (1932). There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word `nuisance.'. . . There is general agreement that it is incapable of any exact or comprehensive definition. W. Prosser W. Keeton, Torts (5th Ed.) § 86. In order to prevail on a claim of nuisance, the plaintiff must establish that (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the [defendant's] land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the [plaintiff's] injuries and damages. . . . (Citations omitted; internal quotation marks omitted.) Heritage Village Master v. Heritage Vil. Water,30 Conn. App. 693, 708, 622 A.2d 578 (1993). When a public nuisance is claimed, a plaintiff must further establish "that the CT Page 5284-ZZZZZ condition or conduct complained of interfered with a right common to the general public. . . ." (Citations omitted; internal quotation marks omitted.) Doe v. Manheimer, 212 Conn. 748, 755-56
n. 4, 563 A.2d 699 (1989). "The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights." Couture v. Board of Education, 6 Conn. App. 309,315, 505 A.2d 432 (1986), quoting Nolan v. New Britain,69 Conn. 668, 678, 38 A. 703 (1897). The allegations of the complaint, read in a light most favorable to the plaintiffs, set forth a claim for private nuisance.
In view of the evidence, the plaintiff has failed to show that the "condition complained of [has] a natural tendency to create danger and inflict injury upon person[s] or property."Heritage Village Master v. Heritage Vil. Water, supra, 30 Conn. App. 708. The plaintiffs testified that the fence erected around the easement is dangerous because they must step onto the road to get around the fence and onto their own property. The photographs submitted by both parties show a rural road that appears to be a single lane in width. The only two houses on this road are the plaintiffs' and defendants'. The photographs also show that there is nowhere to walk along this street except in the road and that the fence stops a few feet short of the road. Testimony from both parties clearly indicated that the fence is entirely on the defendants property and the defendants testified that they erected the fence to keep the plaintiffs from traversing an area of only a few inches along the border of the two properties that belongs to the defendants. In short, the testimony of the defendants is that the fence was erected to keep the Brabants from trespassing on the few inches of property that they would in the past traverse to get to the parking area. Additionally, the photographs show the plaintiffs walking along the road and there was testimony that the plaintiffs' school age children walk in the road to catch the school bus.
The plaintiffs testified that fence is unsightly, that the children will see it as an object to be climbed on, and that snow removal from the area is impossible unless the snow is projected onto the road which is allegedly in violation of town ordinances. The court agrees that the fence is unsightly and out of sync with the rural nature of its surroundings. The fact that it is unattractive, however, does not make the fence a nuisance. As to the allegation that the children will see it as an object to be climbed, there are other alternatives to ensuring that they do not climb the fence such as instructing them that the fence is CT Page 5284-AAAAAA not a gymnasium. In light of the court's conclusion on the issue of whether the fence is a "spite fence" discussed below, the snow removal problem will be resolved.
In summary, the plaintiffs have failed to sustain their burden of proof on the private nuisance claim.
III. Spite Fence
The second count of the plaintiffs' complaint alleges that defendants maliciously erected and maintained a "spite fence" in violation of General Statutes § 52-570.[6] Plaintiffs seek an injunction pursuant to General Statutes § 52-480[7] to require defendants to remove the fence. A cause of action under General Statutes § 52-480 includes the following factors: (1) a structure erected on the defendant's land, (2) the malicious erection of that structure, (3) the intention to injure or annoy the enjoyment of the adjacent landowner's land because of the structure, (4) an impairment of the value of the adjacent land because of the erection of the structure, (5) the enjoyment of the adjacent land is in fact impaired, and (6) the structure is useless to the defendant who erects the fence. See Whitlock v.Uhle, 75 Conn. 423, 53 A. 891 (1903); DeCecco v. Beach, 174 Conn. 29,381 A.2d 437 (1977). Under the statute "a new exception is made to the absolute power of disposition involved in the ownership of land, as well as to the absolute submission involved in that ownership to the chances of damage incident to the use by each owner of his own land." Whitlock v. Uhle, supra, 75 Conn. 426-27.
"[T]he intent to injure by the erection of the structure is an intention which must be discovered mainly from the fact that the structure does impair the value of adjacent land and injure the owner in its use, from the absence of the reasonable possibility of any real advantage, whether of profit, protection, or pleasure, in the use of the land, and from the character, location and surroundings of the structure itself. It is quite possible for a structure to bear on its face, as it were, convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner. Such intention relates to the thing done, its purpose and effect, and does not depend on the existence or non-existence of personal spite or ill-will. The intention is not the motive from which it may spring, but the established purpose, from whatever motive, to use the land in a manner not justified by its ownership, and forbidden by law. When a structure, useless to the CT Page 5284-BBBBBB owner, injuring adjacent land and its owner, intended to work such injury, is willfully erected, it is maliciously erected; that is, it is erected in knowing disregard of the law and the rights of others." Id.
"Whether a structure was maliciously erected is to be determined rather by its character, location and use than by an inquiry into the actual motive in the mind of the party erecting it. Whitlock v. Uhle, supra, 427. It is quite possible for a structure to bear on its face . . . convincing evidence that it was intended for a legitimate purpose, or that it was intended to injure the adjacent land and its owner. . . . The intention is not the motive from which it may have sprung, but the established purpose, from whatever motive, to use the land in a manner not justified by its ownership, and forbidden by law. . . . The intent to injure is determined mainly from the fact that the structure does impair the value of the adjacent land and injure the owner in its use, from the absence of any real usefulness of the structure, or a portion of it in the present case, to the defendant, and from the character, location and surroundings of the structure itself; and, once it is established that malice was the primary motive in its erection, the fact that it also served to protect the defendant's premises from observation must be regarded as only incidental, since to hold otherwise would be to nullify the statutes. Harbison v. White, supra, [46 Conn. 106], 109; see 5 Powell, Real Property 696, p. 280 (1949 Ed., 1977 Rev.)." DeCecco v. Beach, 174 Conn. 29, 32-33, 381 A.2d 543
(1977).
The court finds that the structure in this case was maliciously erected and orders the defendants to remove that portion of the fence bordering the plaintiffs and defendants property. The character of the fence as observed in the photographic evidence demonstrates high, uneven, vertical boards, which face the defendant's property rather than the plaintiff's, exposing the plaintiff's property to the unsightly erection of the fence. The use of the fence is clearly malicious. The location of the fence, and its replacing of a split rail fence along the back of the parking area, demonstrate that defendant's primary goal was to annoy and interfere with the plaintiffs' customary enjoyment of their property. In removing the fence which borders the property, the defendants are ordered to restore the property to its original condition, including the planting of trees or shrubs which may have been lost or removed for the construction of the fence. CT Page 5284-CCCCCC
The court will allow the defendants to retain that portion of the fence which extends along the back of the parking area in question and turns 90 degrees along their home from the parking area to the street, which will allow them to shield their home from the fumes and noise that is occasioned by the plaintiffs' cars. That portion of the fence is the only portion which the defendants can plausibly argue is of benefit to them. In that way as well, the plaintiffs will be able to remove snow without the obstruction of the fence which borders their property.
In light of the court's finding that there was a negative impact on the value of the plaintiff's property by the erection of this spite fence, and by granting the relief sought, its removal, which will restore the property to its original condition, the court awards no damages.
IV. Intentional Infliction of Emotional Distress
"In order for the plaintiff to prevail in a claim for intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . . (Citations omitted; internal quotation marks omitted.) DeLaurentis v. New Haven, 220 Conn. 225,266-67, 597 A.2d 807 (1991)." Drew v. K-Mart Corp., 37 Conn. App. 239,251, 655 A.2d 806 (1995).
William F. McCarthy, a defendant in this action, is the son of the owner of "Parcel B" and a resident of that home with his wife and two sons. He indicated that the parking area which is the subject of this action is eight feet from their home, and that the use of that area by the plaintiffs creates noise, exhaust pollution, and disrupts the sleep habits of the children. On cross-examination, the witness was asked why the fence encircled the entire parking area. He maintained that the fence CT Page 5284-DDDDDD was erected as it was to prevent the plaintiffs from trespassing on his property.
The plaintiffs did not offer any evidence that the defendants acted with the intent to cause emotional distress nor did the plaintiffs offer any evidence to prove that the emotional trauma they experienced was severe. Even when viewed in the light most favorable to the plaintiff, the facts do not support a finding of intent to cause emotional injury or that the plaintiff suffered serious emotional distress. As a matter of law, the plaintiffs have not sustained the burden of proving intentional infliction of emotional distress.
Judgement shall enter consistent with this opinion.
DRANGINIS, J.